UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____ :
                                :
KAREEM BAILEY,                  :
                                :
         Petitioner,            :         Civ. No. 17-13586 (NLH)
                                :
    v.                          :         OPINION
                                :
UNITED STATES OF AMERICA,       :
                                :
         Respondent.            :
_____ :


APPEARANCES:

Jordan Glenn Zeitz, Esq.
Law Offices of Jordan G. Zeitz
18 West Front St
Media, PA 19063

         *Attorneys for Petitioner*


Philip R. Sellinger, United States Attorney
Patrick C. Askin, Assistant United States Attorney
Office of the U.S. Attorney
401 Market Street
4th Floor
Camden, NJ 08101

         *Attorneys for Respondent*



HILLMAN, District Judge

     Kareem Bailey ("Petitioner") moves to vacate, correct, or

set aside his federal sentence pursuant to 28 U.S.C. § 2255.

ECF Nos. 5 & 15; United States v. Bailey, No. 14-cr-0050-9

(D.N.J.) ("Crim. Case").  Respondent United States opposes the motion.  ECF Nos. 12 & 33.

For the reasons that follow, the Court will deny the amended § 2255 motion.  No certificate of appealability shall issue.

**I.  BACKGROUND**

The Court adopts and reproduces the facts of this case as set forth by the United States Court of Appeals for the Third Circuit in its opinion affirming Petitioner's convictions:

> Bailey, [Terry] Davis, [Lamar] Macon, and [Dominique] Venable were associates in a violent heroin-trafficking organization that operated out of the Stanley Holmes Public Housing Village in Atlantic City, New Jersey. This organization was led by Mykal Derry and known as the Derry Drug Trafficking Organization (DDTO).  Derry purchased large quantities of heroin from three New Jersey suppliers and distributed the heroin in "bundles" (ten wax envelopes of heroin) and "bricks" (five bundles) to members of the DDTO.  These DDTO associates then sold the heroin in and around the public housing complex.  Investigators estimated that Derry received 717 bricks of heroin for distribution from October 2012 to February 2013.  The DDTO maintained control of its drug-trafficking turf by assaulting, robbing, and killing rival drug dealers.
>
> In July of 2010, the FBI began investigating the DDTO in conjunction with state and local law enforcement agencies.  At first, confidential informants and undercover police officers made a series of controlled buys that were captured on audio and video recordings. By October, officers had identified Mykal Derry as the leader of the organization.  For the next two years, police relied on confidential informants, controlled buys, physical surveillance, phone records, pen registers, and intercepted prison phone calls placed from the Atlantic County Jail to map the scope of the DDTO's operations.

However, the investigators eventually found these techniques inadequate to uncover the full reach of the conspiracy. In an attempt to remedy this, the government secured authorization for a wiretap from the United States District Court for the District of New Jersey in October 2012. Wiretaps on the phones of Mykal Derry and one of his suppliers, Tyrone Ellis, revealed many DDTO co-conspirators that police had previously been unaware of as well as new evidence regarding the organization's criminal activities. Overall, law enforcement intercepted and recorded approximately 6,700 pertinent calls over the course of their investigation.

In addition to these wiretaps, investigators obtained critical information from Kareem Young, a member of the DDTO. He eventually "flipped" and became a government informant. Prior to cooperating with the government, Young sold drugs for Derry, obtaining them directly from him. Young explained the inner workings of the DDTO to investigators, and he described the defendants' roles in the organization.

United States v. Bailey, 840 F.3d 99, 106-07 (3d Cir. 2016).

On March 18, 2013, Petitioner was charged in a criminal complaint with conspiracy to distribute 1 kilogram or more of heroin, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). Crim. Case No. 1. On February 5, 2014, Petitioner was indicted with fourteen co-defendants by a federal grand jury on the same drug conspiracy charge. Id. ECF No. 45. On June 4, 2014, Petitioner was charged in a 125-count superseding indictment along with 16 co-defendants. Id. ECF No. 194. The superseding indictment charged Petitioner with conspiracy to distribute 1 kilogram or more of heroin (Count 1); possession of firearms and the brandishing and discharge of firearms in furtherance of a drug

trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i)-(iii) (Count 10); and numerous counts of using a communications facility to further a drug trafficking crime, 21 U.S.C. § 843(b).  Id.

On July 16, 2014, AUSA Justin Danilewitz sent John Holliday, Petitioner's trial counsel, an email stating that the United States was prepared to extend a plea offer in which it would drop the § 924(c) charge and allow Petitioner to plead guilty to a single count of conspiring to distribute and possess with intent to distribute 100 grams or more of heroin in a protected zone ("July 2014 Offer").  ECF No. 60-1.  This would have "lowered the mandatory minimum on Count One from 10 years to 5 years."  ECF No. 60 at 2.  "The suggested guideline calculations would result in a total offense level of 27.  With Bailey's criminal history of Category III, the advisory guideline range on a plea agreement based on these terms would be 87-108 months."  Id.  Danilewitz asked Holliday to present the terms to Petitioner as soon as possible as he needed to seek supervisory approval for the deal before the pre-trial motions deadline.  ECF No. 60-1 at 1.

Holliday met with Petitioner on July 20, 2014 promptly and in person at the Federal Detention Center ("FDC") in Philadelphia.  Certification of John M. Holliday, ECF No. 60-8 ("Holliday Cert.") ¶ 7.  Petitioner "unequivocally rejected the offer[.]"  Id.  Holliday diligently sent an email to Danilewitz

4

on July 22, 2014 ("July 22 Email") confirming he had met with
Bailey and conveyed the plea offer, stating: "After recently
meeting with Kareem Bailey he had indicated that he will not
enter a plea agreement pursuant to the terms outlined in your
7/16/14 email."  ECF No. 60-2.

Despite the earlier rejected plea offer, Danilewitz emailed
Holliday again on October 1, 2014 this time with a proposed
written agreement dated September 29, 2014 offering a plea
pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("C-
Plea").[1]  ECF No. 60-3.  In exchange for a guilty plea to a one-
count superseding information to conspiracy to distribute 100
grams or more of a mixture containing heroin, the United States
would agree to an 84-month sentence followed by 8 years of
supervised release.  Id. at 3.  Holliday visited Petitioner on
October 2 and 7, 2014 at the FDC to discuss the C-Plea.
Holliday Cert. ¶ 8.  See also ECF No. 60-8 at 11.  Holliday gave
Petitioner a copy of the C-Plea to review on his own.  May 25,
2022 Tr., ECF No. 49, 26:9-12.  Petitioner ultimately rejected
the C-Plea.  ECF No. 60-8 at 11.

---

[1] Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure
permits the parties to "agree that a specific sentence or
sentencing range is the appropriate disposition of the case, or
that a particular provision of the Sentencing Guidelines, or
policy statement, or sentencing factor does or does not apply
(such a recommendation or request binds the court once the court
accepts the plea agreement)."

Petitioner proceeded to trial before a jury and the Honorable Joseph E. Irenas, D.N.J., beginning on November 17, 2014.  Crim. Case No. 480.  On January 16, 2015, the jury returned a guilty verdict against Petitioner as to Counts 1 and 10, and as to all but one of the phone counts.  Id. ECF No. 553. At the sentencing hearing on May 1, 2015, Judge Irenas sentenced Petitioner to 121 months for Count 1, one month greater than the mandatory minimum for that offense, as well as 120 months for Count 10 to run consecutively.  Id. ECF No. 652.  Petitioner received a 48-month sentence for the phone counts, to run concurrently with each other and Count 1.  Id. at 2. Accordingly, Petitioner was sentenced to a total of 241 months. Id.  Petitioner also received a total of 10 years on supervised release.  Id. at 3.

Petitioner appealed to the Third Circuit.  Crim. Case No. 650.  The Third Circuit affirmed his conviction and sentence on October 18, 2016.[2]  United States v. Bailey, 840 F.3d 99 (2016). Petitioner then filed a petition for a writ of certiorari in the United States Supreme Court, which was denied on February 21, 2017.  Bailey v. United States, 580 U.S. 1137 (2017).

On December 27, 2017, Petitioner filed a motion to vacate, set aside, or correct his sentence under § 2255.  ECF No. 1.  On

---

[2] Holliday continued to represent Petitioner before the Third Circuit.

6

February 13, 2018, he filed an amended motion at the Court's direction.  ECF No. 5.  The amended motion put forth two central claims: that Petitioner suffered ineffective assistance of counsel due to Holliday's alleged failure to (1) properly and sufficiently counsel Petitioner as to the possible sentence he faced if he went to trial instead of accepting the C-Plea, and (2) put forth an argument that under United States v. Collado, 975 F.2d 985 (3d Cir. 1992), "the drugs attributed to Petitioner were not reasonably foreseeable to him or within the scope of his agreement," and therefore should not have been considered in calculating the proper guidelines range under the Sentencing Guidelines.  Id. at 4-5, 33.

The United States filed a letter response on November 1, 2018, ECF No. 9, and then at the Court's direction filed a memorandum of law in opposition to the motion to vacate on January 7, 2019.  ECF No. 12.  Petitioner moved to amend his § 2255 a second time on January 17, 2020 to add six new claims. ECF No. 15.  The Court granted the motion to amend as to his ineffective assistance of counsel claim regarding a possible downward departure under U.S.S.G. § 3B1.2 but denied it as to the other five claims.  ECF No. 29.  The United States submitted a supplemental brief responding to the new claim on April 19, 2021.  ECF No. 33.

On July 7, 2021, the Court granted Petitioner's motion for the appointment of counsel under the Criminal Justice Act ("CJA") because it agreed with the parties that an evidentiary hearing was necessary to resolve Ground One of the amended motion.  ECF No. 37 (citing 28 U.S.C. § 2255 Rule 8(c); 18 U.S.C. § 3006A).  A hearing was held on May 25, 2022 at which Petitioner and Holliday testified.  See generally May 25, 2022 Tr.

Petitioner testified he did not know that the United States would be able to present evidence of his juvenile record, a September 2010 New Jersey state conviction for possession of cocaine and a handgun, before he rejected the C-Plea.  Id. 27:15-23.  He testified that Holliday had told him that the United States would not be able to use it at trial.  Id. 27:25 to 28:4.  Petitioner also testified that he had not known that the United States would call Kareem Young as a cooperating witness before he rejected the C-Plea.  Id. 32:20-24.  According to Petitioner, Holliday said trial would be "a piece of cake." Id. 36:2.

During cross-examination, Petitioner conceded that he knew that he was facing a total of 240 months of mandatory sentences if he were convicted of Counts 1 and 10 prior to rejecting the C-Plea.  Id. 44:7-15.  Petitioner testified that he had not known about the July 2014 Offer at all.  Id. 118:7-19, 123:8-16.

Holliday testified he had reviewed the "voluminous" discovery with Petitioner and considered the Government's case to be "[c]ompelling" and "overwhelming." Id. 143:3. He stated he told Petitioner that there was "a substantial likelihood of conviction." Id. 143:4-5. Holliday further testified that he had discussed both the July 2014 Offer and the C-Plea in detail with Petitioner as well as the potential sentencing exposure if Petitioner was convicted at trial. Id. 145:13-18, 160:3-24, 164:10 to 165:19. According to Holliday, Petitioner "was never interested in me engaging in plea negotiations. That's not something that he was really interested in me doing." Id. 151:6-8. He denied ever telling Petitioner that trial would be a piece of cake. Id. 153:6-9. At the end of the hearing, the parties agreed to keep the record open to allow Holliday to review his file for any further relevant documents. Id. 223:10 to 224:6.

The matter was continued but was unfortunately delayed when Petitioner's CJA counsel became indisposed. ECF No. 46. The Court appointed new CJA counsel, ECF No. 53, and permitted counsel to file a supplemental brief, ECF No. 55. The supplemental brief argued Holliday provided ineffective assistance of counsel by failing to provide Petitioner with a written copy of the July 2014 Offer. ECF No. 55 at 12. Petitioner also asserted that Holliday failed to provide him

with necessary information before Petitioner rejected the C-Plea, specifically that the trial court allowed Petitioner's juvenile record to be used as evidence and that Young would be testifying on the Government's behalf.  Id. at 13-14.  The United States filed a supplemental response.  ECF No. 60.

The Court conducted oral argument on September 25, 2023. Sept. 25, 2023 Tr., ECF No. 67.  The parties had agreed that no further testimony was necessary and that the file review had produced a few notes, which were submitted with Petitioner's supplemental brief.  Id. 3:5-8, 4:21-25.  The Court kept the record open after oral argument to allow the parties to review the voluminous transcripts and proceedings to see if Judge Irenas had conducted a Frye[3] colloquy regarding the plea offers and when Jencks Act[4] materials were produced.  Id. 70:12-20. While the record was clear that the Government had proposed a Frye hearing and that all parties to the proceeding - the Government attorney, Holliday, and even Petitioner himself - recalled one had occurred, a searching inquiry of the record failed to confirm such a hearing was ever held.

_____

[3] The Supreme Court's opinion in Missouri v. Frye, 566 U.S. 134 (2012), holding that defense counsel has the duty to communicate formal offers from the prosecution, was relatively new at the time of the plea negotiations in Petitioner's criminal proceedings.  See Sept. 25, 2023 Tr. 16:22-25.

[4] See 18 U.S.C. § 3500; Jencks v. United States, 353 U.S. 657 (1957).

The parties appeared again on November 7, 2023, ECF No. 66, and after reporting to the Court that they had been unable to locate a Frye colloquy in the trial record, Nov. 7, 2023 Draft Tr. 5:2-3, the Court closed the evidentiary record but permitted the parties to submit closing briefs.  ECF Nos. 68-69.

## II.  STANDARD OF REVIEW

Section 2255 provides in relevant part that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  However, section 2255 does not provide a remedy for all trial or sentencing errors.  See United States v. Addonizio, 442 U.S. 178, 184-85 (1979).  "Section 2255 permits relief for an error of law or fact only where the error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

## III. DISCUSSION

At the outset, it is necessary to clarify the claims before the Court.  Petitioner's *pro se* amended motion argued that he suffered ineffective assistance of counsel because Holliday failed to properly and sufficiently inform Petitioner of the

11

possible sentence he faced if he went to trial rather than accepting the C-Plea and failed to argue that the drugs attributed to Petitioner were not reasonably foreseeable to him or within the scope of his agreement.  ECF No. 5 at 4-5, 33. The Court later permitted Petitioner to add a claim of ineffective assistance of counsel claim regarding a possible downward departure under U.S.S.G. § 3B1.2.  ECF No. 29.

At oral argument, CJA counsel represented to the Court that Petitioner's arguments about the C-Plea were limited to arguing that Holliday was ineffective in fully discussing the plea with Petitioner due to the absence of a full discussion about cooperators and the admission of the juvenile record.  Sept. 25, 2023 Tr. 45:17-25.  Based on counsel's representation and Petitioner's evidentiary hearing testimony that he knew about the mandatory 240-month sentence if he were convicted at trial, May 25, 2022 Tr. 44:7-15, the Court considers Petitioner's argument that he was not aware of his sentencing exposure to be waived.

Arguably, counsel should have filed a motion to amend to include the claims that Holliday failed to advise Petitioner on the admission of his juvenile record, Young's testimony, and the July 2014 Offer.  However, the United States did not oppose the addition of the new claims.  See generally ECF No. 60.

Therefore, the Court will consider these arguments as part of Petitioner's amended motion.

Under Strickland v. Washington, a claim of ineffective assistance of counsel requires a petitioner to show that (1) defense counsel's performance was deficient and (2) the deficiency actually prejudiced the petitioner.  466 U.S. 668, 687 (1984).  The first Strickland prong is satisfied if defense counsel made errors that were serious enough such that counsel was not functioning as the "counsel" that the Sixth Amendment guarantees.  Id.  This is a high standard, especially given the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  A court must be "highly deferential" to a defense counsel's decisions and should not "second-guess counsel's assistance after conviction."  Strickland, 466 U.S. at 689; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996).

For the second Strickland prong, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  "The likelihood of a different result must be substantial,

not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

A.   Failure to Communicate July 2014 Offer

The Court first considers Petitioner's assertion that Holliday failed to inform him of the July 2014 Offer in violation of Missouri v. Frye, 566 U.S. 134 (2012).  After reviewing the submissions of the parties and assessing the credibility of the testimony at the evidentiary hearing, the Court will deny relief on this claim.

The Court first finds that the July 2014 Offer was a plea offer that was required to be presented to Petitioner for his consideration despite its informal presentation to Holliday. The detailed nature of Danilewitz's email to Holliday and Holliday's admission that he viewed the July 2014 Offer as "a plea offer that the government was making to Mr. Bailey" indicate that both sides perceived the July 2014 Offer to be an offer even though it was not put into a formal plea agreement letter.  See May 25, 2022 Tr. 155:22-23.

The Court next concludes that Holliday credibly testified that he reviewed the July 2014 Offer with Petitioner in person and that Petitioner rejected the terms of the agreement. Holliday's July 22 e-mail memorializes his meeting with Petitioner and provides convincing contemporaneous evidence corroborative of his testimony.  ECF No. 60-2.  Furthermore,

14

Petitioner admitted that Holliday visited him "multiple times" in July 2014.  May 25, 2022 Tr. 123:2.

The Court also finds that Petitioner was not a credible witness at the hearing.  Petitioner testified that Holliday told him that trial would be "a piece of cake," that they would "easily win this case on count 1 and count 10," and that Holliday thought Petitioner would be acquitted.  Id. 46:9-21. Holliday started his career as a Deputy Attorney General in the New Jersey Division of Criminal Justice in 1987.  Id. 135:22-23. He was then an Assistant Prosecutor in Mercer County, id. 135:23-24, and entered private practice in 1991, id. 136:3.  He started practicing criminal law and joined the District of New Jersey's CJA panel at that time.  Id. 136:4-19.  Before being appointed to represent Petitioner at his trial, Holliday had tried around eight criminal trials in federal court, including at least one drug trafficking conspiracy case.  Id. 137:23 to 138:11.  It is not credible that a criminal defense attorney with this level of experience would claim to a client that trial would be "a piece of cake" or easily winnable.[5]  Petitioner also

---

[5] Petitioner argues the "piece of cake" phrase should be interpreted as "a reference to trial counsel's experience in handling federal and state jury trial."  ECF No. 55 at 6 n.4. The Court is not persuaded.  The first reference to a "piece of cake" was by Petitioner in discussing a conversation with Holliday: "I had asked him what you think about trial?  He said, man, it's a piece of cake.  I said how so?  He said from what I understand and what I'm going through, they can't charge you for

admitted that he had no problem lying to people, although he claimed that was limited to "on the street." Id. 69:19-24.  All in all, the Court finds Holliday to be a more credible witness than Petitioner.  From there, the Court concludes that Holliday discussed the July 2014 Offer with Petitioner in July 2014 and that Petitioner rejected the offer.

The Court concludes that Holliday's representation did not fall below an objective standard of reasonableness by not providing Petitioner with a copy of Danilewitz's email.  Frye requires counsel "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  566 U.S. at 145.  Holliday satisfied this requirement when he discussed the email's proposed plea in depth with Petitioner in person on July 20, 2014.  See May 25, 2022 Tr. 160:7-24, 161:3-11.  Frye's reference to the "best practice" of memorializing the agreement in writing is dictum and is not the holding of the case.  See Frye, 566 U.S. at 146-47.

---

count 1 to count 10."  May 25, 2022 Tr. 36:1-4.  The Court interprets this testimony as stating that Holliday claimed winning would be easy because there was not enough evidence to convict Petitioner.  This is supported by Petitioner's statement on cross-examination that the "piece of cake" phrase was a direct quote from Holliday in relation to "assessing or evaluating the evidence in this case . . . ."  Id. 46:9-14.

The fact that Holliday did not provide a copy of the email itself does not rise to the level of ineffectiveness because Holliday provided Petitioner all the information that Petitioner needed to make an informed decision whether to plead guilty. Petitioner had the chance to speak with Holliday directly and ask Holliday any questions he may have had about the offer. Even assuming Petitioner has the hearing difficulties he claims, there was no requirement that Holliday present the offer in writing if it was otherwise conveyed with the requisite detail and clarity. Holliday's credible testimony establishes that he effectively and clearly communicated the government's offer to Petitioner.

The Court finds that Petitioner has not satisfied the first Strickland element. Therefore, the Court will deny relief under § 2255 for this claim.

B.   Ineffective Assistance in Connection with C-Plea

Petitioner further argues Holliday was ineffective in connection with Petitioner's consideration of the C-Plea because Holliday did not advise Petitioner of Judge Irenas' pre-trial ruling regarding his juvenile record and did not discuss Young's testimony with Petitioner. ECF No. 69 at 1-2. Petitioner asserts he would have accepted the C-Plea if Holliday had fully discussed these issues with him. May 25, 2022 Tr. 45:17-25. These arguments are without merit.

17

The United States offered the C-Plea on October 1, 2014,
ECF No. 60-3, and Petitioner rejected the plea on October 7,
2014, ECF No. 12-2 at 11.  Judge Irenas issued his ruling on the
admissibility of Petitioner's juvenile record on October 15,
2014, after Petitioner rejected the plea.  Crim. Case No. 426 at
5.  Holliday could not have discussed the ruling to allow the
evidence before Judge Irenas issued it, and Petitioner admits
that he did not ask Holliday to go back to the United States and
try to renegotiate a plea after the ruling was issued, see May
25, 2022 Tr. 77:15 to 78:2.

Moreover, Petitioner has not cited any support for the idea
that Strickland requires an attorney to attempt to reopen plea
negotiations after every unfavorable pre-trial ruling.
Petitioner has not shown that Holliday acted objectively
unreasonable regarding the ruling.

Petitioner's argument regarding Young's testimony is
likewise meritless.  Despite being given the opportunity to
supplement the record after the May 2022 evidentiary hearing,
Petitioner has not presented the Court with evidence that
Holliday knew Young would be cooperating at trial prior to
October 7, 2014.  It is not clear when the United States
identified Young as a witness, but it represented to Judge
Irenas on October 10, 2014 that Jencks material for cooperating

18

witnesses had not yet been produced.  Oct. 10, 2014 Tr., Crim.
Case No. 439, 86:22-25.

The Court finds credible Holliday's testimony that he
discussed the possibility of cooperating witness testimony with
Petitioner at some point in time, May 25, 2022 Tr. 216:2-12, and
the Court cannot fault Holliday for not conveying to Petitioner
the fact that Young would be a government witness when the
disclosure of Young's identity did not happen until after
Petitioner rejected the C-Plea.  There is no legal obligation
for the government to disclose such information, nor is there a
legal mechanism for the defense to compel it.

The Court concludes Petitioner received effective
assistance of counsel in connection with his consideration of
the C-Plea agreement.  Petitioner admits Holliday visited him to
go over the C-Plea in person.  Id. 28:7-21.  Petitioner had a
copy of the plea agreement to review on his own.  Id. 26:9-12.
He testified at the evidentiary hearing that he was aware he was
facing a 20-year mandatory minimum if he was convicted at trial.
Id. 44:7-15.  The Court credits Holliday's testimony that he
attempted to convey that taking one of the plea offers would be
in Petitioner's best interests.  Id. 152:15-21, 164:18 to
165:24.

Therefore, the Court finds no merit to Petitioner's
ineffective assistance of counsel claim and will deny relief
under § 2255.

C.   Failure to Challenge Drug Amount

Petitioner further asserts that Holliday provided
ineffective assistance of counsel when Holliday did not argue at
sentencing and on appeal that the amount of drugs calculated in
the Pre-Sentence Report ("PSR") was reasonably foreseeable to
Petitioner based on Petitioner's minimal role in the conspiracy.
ECF No. 5 at 4-5, 33-36.  The Court did not take evidence
regarding this claim at the evidentiary hearing as it is clear
from the record that Petitioner is not entitled to relief.

At the time of Petitioner's sentencing, U.S.S.G. § 1B1.3
Application Note 1 "instruct[ed] courts to assess accomplice
attribution by determining whether the co-conspirator's conduct
was 'in furtherance of the . . . jointly-undertaken . . .
activity' (as opposed to the conspiracy as described in the
count of conviction), 'within the scope of the defendant's
agreement,' and 'reasonably foreseeable in connection with the
criminal activity the defendant agreed to undertake.'"  United
States v. Collado, 975 F.2d 985, 991-22 (3d Cir. 1992)
(omissions in original) (emphasis omitted) (quoting U.S.S.G. §
1B1.3 app. note 1).  "[W]hether a particular defendant may be
held accountable for amounts of drugs involved in transactions

20

conducted by a co-conspirator depends upon the degree of the defendant's involvement in the conspiracy and, of course, reasonable foreseeability with respect to the conduct of others within the conspiracy." Id. at 992.

At the time of Petitioner's sentencing and appeal, the Third Circuit did not require "a defendant-specific determination of drug quantity for purposes of triggering a mandatory minimum . . . ." United States v. Whitted, 436 F. App'x 102, 105 (3d Cir. 2011).[6] See also Lewis v. United States, No. 13-1453, 2015 WL 3651721, at *9 (D.N.J. June 11, 2015) ("The jury in this case specifically found the type and quantity of drags involved in the conspiracy . . . establishing that the conspiracy involved more than five kilograms of cocaine. As such, the statutory sentencing range applicable to all members of that conspiracy . . . was therefore ten years to life." (emphasis omitted)).

---

[6] The Third Circuit recently decided as a matter of first impression that "a jury, in determining drug quantity for purposes of the mandatory minimum term of imprisonment, may attribute to a defendant only those quantities involved in violations of § 841(a) that were within the scope of the conspiracy, or in furtherance of it, and were reasonably foreseeable to the defendant as a natural consequence of his unlawful agreement." United States v. Williams, 974 F.3d 320, 362-63 (3d Cir. 2020). "[I]n making litigation decisions, 'there is no general duty on the part of defense counsel to anticipate changes in the law.'" Sistrunk v. Vaughn, 96 F.3d 666, 670-71(3d Cir. 1996) (quoting Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)).

In Count 1, the jury found that the United States had proved beyond a reasonable doubt that Petitioner was a part of a conspiracy involving more than 1 kilogram of heroin. Crim. Case No. 553 at 1-2. As a result, Judge Irenas was required to impose a minimum sentence of 120 months on Count 1. 21 U.S.C. § 841(b)(1)(A)(i). Given the state of Third Circuit law at the time, it was reasonable for Holliday to not raise this argument either at sentencing or on appeal.

Moreover, Petitioner has not shown that there is a reasonable probability that his sentence would have been different if Holliday made this argument at sentencing or on appeal. "In determining the drugs attributable to a defendant at sentencing, a court may consider 'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant[.]'" United States v. Womack, No. 19-1900, 2022 WL 4376073, at *3 (3d Cir. Sept. 22, 2022) (quoting U.S.S.G. § 1B1.3(a)(1)(A) (alteration in original)). "For conspiracies, a court may also look to 'all acts and omissions of others' within the scope of the joint undertaking, in furtherance of the crime, and which are reasonably foreseeable." Id. (quoting U.S.S.G. § 1B1.3(a)(1)(B)). There is more than enough evidence in the record from which Judge Irenas could have concluded by a

preponderance that the entire amount of heroin alleged in the indictment was reasonably foreseeable to Petitioner.

For example, Young testified that Petitioner sold crack and heroin for Derry "every day" in Atlantic City in 2012 and early 2013.  Dec. 11, 2014 Tr., Crim. Case No. 548, 3716:16-20.  "[V]ideotaped surveillance from December 17, 2012, showed [Petitioner] leaving the organization's trap house at 236 Rosemont Place in the first village of Stanley Holmes Village, along with uncharged coconspirator Jermaine Reynolds."  Crim. Case No. 642 at 15.[7]  This is significant because McNamara testified that drug organizations limit access to trap houses to trusted individuals who are involved with the organization.  Jan. 8, 2015 Tr. 5413:13 to 5414:18.

McNamara also testified that trap houses would have to contain enough supply "to service the customers."  Id. 5414:23-25.  Additionally, "[r]ecorded calls revealed Bailey setting up sales for Derry."  United States v. Bailey, 840 F.3d 99, 111 (3d Cir. 2016).  See, e.g., Nov. 19, 2014 Tr., Crim. Case No. 490, 1898:13 to 1900:7 (Testimony of Special Agent Christopher Kopp

---

[7] DEA Special Agent David McNamara, the Government's drug trafficking expert, testified that "[a] trap house or a flow house is essentially . . . [is] an inside location in which the users actually go into the house or up to the house, maybe to the front door, to a window, or they actually go inside the residence or the dwelling to make the drug transaction and then they leave."  Jan. 8, 2015 Tr., Crim. Case No. 535, 5412:9-15.

regarding phone calls).  This is only some of the evidence
presented at trial that supports a conclusion that the full
amount of drugs was reasonably foreseeable to Petitioner due to
his extensive involvement with Derry and access to locations
where supplies for customers would have to be stored.

Because the trial record supports a finding that the amount
of heroin alleged in the indictment was reasonably foreseeable
to Petitioner, he has not shown a reasonable likelihood that his
sentence would have been different.  He also has not shown a
reasonable likelihood that his appeal would have turned out
differently.  Therefore, Petitioner has not satisfied the
Strickland prejudice element and is not entitled to relief under
§ 2255.

D.   Downward Departure Under U.S.S.G. § 3B1.2

The Court permitted Petitioner to add a claim that Holliday
was ineffective for failing to argue for a downward departure
under U.S.S.G. § 3B1.2.  ECF No. 29.  The Court did not take
evidence regarding this claim at the evidentiary hearing as it
is clear from the record that Petitioner is not entitled to
relief.

Sentencing Guideline 3B1.2 permits a court to decrease the
offense level when the defendant was a minor or mitigating
participant in the offense, or somewhere in between.  "This
section provides a range of adjustments for a defendant who

24

plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S. Sent'g Guidelines Manual § 3B1.2 app. note 3(A) (U.S. Sent'g Comm'n 2014). The reduction for a "minimal participant" is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." Id. app. note 4. A "minor participant" applies to defendants "who [are] less culpable than most other participants in the criminal activity, but whose role[s] could not be described as minimal." Id. app. note 5.

"In determining whether a role adjustment is warranted, courts should consider, among other factors: '(1) the defendant's awareness of the nature and scope of the criminal enterprise; (2) the nature of the defendant's relationship to the other participants; and (3) the importance of the defendant's actions to the success of the venture.'" United States v. Womack, 55 F.4th 219, 244 (3d Cir. 2022) (quoting United States v. Brown, 250 F.3d 811, 819 (3d Cir. 2001)).

Petitioner has not shown that there is a reasonable likelihood that his sentence would have been different if Holliday had argued for a departure at sentencing or on appeal. As discussed supra, the trial record is replete with evidence that Petitioner had more than a minor or mitigating role in the conspiracy. According to the evidence presented at trial,

Petitioner interacted directly with Derry in distributing
heroin, acted as a lookout, and participated in attempting to
raise funds to bail out DDTO members.  See United States v.
Bailey, 840 F.3d 99, 111 (3d Cir. 2016).  This is not the
behavior of a minor or mitigating participant.  See United
States v. Berry, 314 F. App'x 486, 488-89 (3d Cir. 2008).

Holliday successfully argued for a downward variance as
part of Judge Irenas' consideration of the 18 U.S.C. § 3553(a)
factors.  See ECF No. 12-3 at 8-15; Sent'g Tr., Crim. Case No.
730, 32:19 to 34:3.  Judge Irenas agreed that Petitioner's
character and history warranted lowering the guideline range
from 151-188 months to 121-151 months.  Id. 33:1-4.  He
sentenced Petitioner to 121 months on Count 1, the bottom of the
adjusted range and only one month over the 120-month mandatory
minimum.  Id. 33:19-24.  He then sentenced Petitioner to the
120-month mandatory minimum for Count 10, which was required to
be consecutive to Count 1.  Id. 33:25 to 34:2.

There is not a reasonable likelihood that this result would
have been different had Holliday tried to argue for a departure
under U.S.S.G. § 3B1.2, nor is there a reasonable likelihood
that Petitioner's appeal would have turned out differently if
Holliday raised this argument.

The Court will deny relief under § 2255.

26

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court denies a certificate of appealability because jurists of reason would not find it debatable that Petitioner has not made a substantial showing of the denial of a constitutional right.

## V. CONCLUSION

For the foregoing reasons, the amended motion to correct, vacate, or set aside Petitioner's federal conviction will be denied.  No certificate of appealability shall issue.

An appropriate order will be entered.


Dated: January 23, 2024          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

27